BOYER, Judge
(dissenting).
I would reverse.
The plaintiff filed a second amended complaint for inverse condemnation to which the defendants filed no motion to dismiss. In due course the case was heard before the trial judge “upon a full and plenary hearing” for the stated purpose of the judge making a judicial determination as to whether or not there had been a taking, as a condition precedent to submitting the matter to the jury for the determination of the damages.
None of the parties have raised any procedural issues. The appellees simply argue in their briefs, and argued during .oral argument before this Court, that the damages sustained by the plaintiff-appellant occurred as a result of a single incident and that therefore the plaintiff’s remedy was in a tort action rather than inverse condemnation ; further asserting that sovereign immunity barred a tort action.
A reading of the record before us reveals that the appellees’ “single incident” contention simply is not in accordance with the evidence. While it is clear that there has been no total taking of the plaintiff’s property in that it has not been rendered totally useless for residential purposes, or otherwise; nevertheless the evidence is equally clear that the plaintiff’s damage, which is not really contradicted, resulted not from a single incident but from repeated and continued floodings and excessive moisture, all of which occurred since ap-pellees changed the grade of the road in front of appellant’s home. Every witness who testified and who had actual knowledge of the circumstances as they existed prior to the construction of the new road and subsequent thereto, testified without exception that prior to the construction of the new road there was a sandy road *631 which ran along essentially the same course as the new road and that the plaintiff’s property was dry and habitable. Each of those witnesses further testified that since construction of the new road sheets of water are directed across appellant’s property and the property is virtually always wet and soggy, with water standing under the house. The excessive moisture has caused the house to rot and warp and sink and become unlevel.
The Department of Transportation called one “expert witness”, whose testimony was based exclusively on hearsay information and upon contour maps which were also based upon secondhand information. He testified as an expert that because of the contour of the land no water should or would be shed upon appellant’s property. However, he did not testify that he knew the condition of the property before the construction of the highway nor did he testify that the property is now as dry as it was before such construction. It is also interesting to note that appellees’ own witness, an engineer, testified that based upon the information received from this same “expert” (and by the use of his contour maps) the appellees, before constructing the highway, determined that it would not be necessary to construct ditches nor to install culverts in the vicinity of the appellant’s property because there would be no water shed to be diverted by such ditches and culverts; but that in truth and in fact during construction they discovered that such information was incorrect and it did indeed become necessary to construct such ditches and to install such culverts. Further, according to all of the witnesses who testified on the subject, the ditches and culverts have not fulfilled their purpose of diverting the watef entirely off of appellant’s property. It is apparent therefore that the expert’s initial conclusions were in error and there is no evidence that the basis of the initial conclusions were in any manner altered prior to his testimony in the case sub judice.
In short, every witness who testified as to actual knowledge of the condition of the property before and after construction of the new road stated that before construction appellant’s property was high, dry and habitable and that it is now wet and soggy with water standing under the house. The situation appears to be permanent and continuing and therefore is not a “single incident”.
I have not overlooked that the able trial judge, as trier of the facts, actually viewed the premises. We are not told whether that view took place in an extremely dry per:od or during a storm. However, in my view, it really makes no difference. When a trial judge is the trier of facts he stands in exactly the same posture as a jury. The purpose of a view is to assist the jury (the trier of the facts) to better understand, interpret and weigh the evidence that has been adduced: It does not have the purpose of allowing the trier of the facts to arrive at an independent determination. (Dade County v. Renedo, Fla. 1962, 147 So.2d 313, 1 A.L.R.3d 1391). Florida courts have consistently held that while the knowledge gained by the jury’s view of the property and its surroundings may be of assistance to them in interpreting and weighing the testimony of the witnesses, the questions of value and damage must be determined upon the evidence and not upon information gained by the view. (See 12 Fla.Jur., Eminent Domain, § 143 and the many cases there cited.)
It appears to me, therefore, that the trial judge, notwithstanding his personal view, was bound by the testimony of the several witnesses who appeared before him who had actual knowledge of the condition of appellant's property prior to the new construction and subsequent thereto. The testimony of those witnesses unequivocally establishes that appellant has been damaged and that the damage is constant and continuing in nature. It did not result, according to those witnesses, from a single incident. Accordingly, appellant properly brought her suit for inverse condemnation rather than on a theory of tort, barred by the doctrine of sovereign immunity, as urged by appellees.